### B. F. Pecht v. The State.

No. 4233. Decided December 20, 1916.

**1.—Carrying Pistol—Evidence—Res Gestae.**

Where, upon trial of unlawfully carrying a pistol, the State was permitted to introduce testimony as to the details of the difficulty during which it was claimed the defendant exhibited the pistol, there was no reversible error, as it was part of the res gestae.

**2.—Same—Argument of Counsel—Verbal Charge.**

Where, upon trial of unlawfully carrying a pistol, the State's attorney commented on matters which were not in evidence, as to the reputation for truth and veracity of one of the witnesses, about which there was no testimony, and to which an objection was sustained, and the jury were orally told to disregard this part of the argument, but the request of the defendant that the jury be instructed in regard to this matter that they should not consider any private knowledge that they might have of the witness for truthfulness, etc., was refused by the court, the same was reversible error, as such argument under the facts was harmful to the defendant, and the court's verbal instruction to the jury was not sufficient. Prendergast, Presiding Judge, dissenting.

**3.—Same—Rule State—Charge of Court—Verbal Charge.**

The statute prohibits verbal charges given the jury in misdemeanor cases, except by consent of the parties, and a verbal instruction by the court is not in accordance with the statute, which is mandatory, and a verbal instruction to the jury to disregard State's counsel's argument was not sufficient, where the defendant requested further that the jury should be properly instructed in regard to this matter. Prendergast, Presiding Judge, dissenting.

Appeal from the County Court of Williamson. Tried below before the Hon. Richard Critz.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of one hundred dollars.

The opinion states the case.

*Melasky & Moody,* for appellant.—On question of introducing testimony as to details of difficulty: Irvine v. State, 18 Texas Crim. App., 51; Driskill v. State, 11 id., 60; O'Neal v. State, 22 S. W. Rep., 25; Garner v. State, 64 id., 1044; Harper v. State, 65 id., 182; Hood v. State, 72 id., 592; Irvine v. State, 51 Texas Crim. Rep., 52; Baker v. State, 28 Texas Crim. App., 5; Valdez v. State, 18 id., 414.

On question of refusal of requested charge to instruct jury not to consider argument of State's counsel: 1 Mechie's Digest Criminal Rep., 410; Wilkins v. State, 33 Texas Crim. Rep., 320; Ricks v. State, 19 Texas Crim. App., 308; Alexander v. State, 40 Texas Crim. Rep., 395; Alexander v. State, 50 id., 716.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of res gestae: O'Neal v. State, 32 Texas Crim. Rep., 42; Garner v. State, 64 S. W. Rep., 1044; Hutchinson v. State, 58 Texas Crim. Rep., 228; Schuh v. State, 124 S. W. Rep., 909.

On question of verbal charge: McMurray v. State, 38 Texas Crim. Rep., 677; Mooney v. State 76 Texas Crim. Rep., 539.

DAVIDSON, JUDGE.—This is an appeal from a conviction for violating the pistol law.

The evidence, briefly stated, is that appellant left his home, a few miles from Taylor, in Williamson County, expecting to go to Fort Worth and thence west to secure work in grain fields. After reaching Taylor he went out a few miles to bid some friends farewell. Returning to Taylor he stopped at a little store to get something to eat. While there the witnesses Tom Avery and Jim Kuykendall entered the store. Avery and appellant engaged in a conversation which seems to have involved some ladies. This conversation was not heard by anybody except Avery and appellant. The fact that the conversation was carried on was known but the language employed was not heard by anyone except a remark by appellant that Avery was a damn liar. That brought up a difficulty. Among other things, the witness Kuykendall threw a soda water bottle at appellant, and then drew his knife, telling Avery to strike or beat appellant with an ax handle. Appellant cursed Kuykendall and invited him outside for a fight. The owner of the store testified that appellant came to the store first, the other two witnesses coming in subsequently. While there are some discrepancies in their testimony as to the difficulty, it is not of a very material character. Kuykendall and Avery testified to seeing appellant pull what they say was a pistol. They saw the butt of a pistol, cylinder, and part of the

barrel. The owner of the store testified he did not see any pistol. This pistol was drawn after Knykendall threw the bottle, drew his knife, and told Avery to beat appellant with an ax handle. Appellant testified he had no pistol then and had not owned one for years. Avery, when used as a witness, was impeached by quite a number of witnesses. This testimony left the case in this attitude. Avery and Kuykendall testified to seeing the pistol; the store-keeper testified he did not see it. Appellant testified he did not have a pistol and had not owned or carried one for years. Avery was impeached; Kuykendall was not, and there was no attempt to impeach him, so far as this record is concerned. Appellant was an interested witness, being the defendant in the case. Of course, his interest in the case would be considered by the jury from that viewpoint. Kuykendall testified he had nothing against the defendant, but was not friendly with him. He did say, however, that he had stated that he believed defendant ought to be put in jail on account of this matter, and then seemed to be of that opinion. This is the case substantially.

There are no exceptions to the court's charge, and, therefore, nothing to review from that viewpoint. Appellant interposed objection to the testimony of the witnesses as to the details of the difficulty at the store in which the State claimed the pistol was exhibited. We are of opinion that this testimony was admissible. It would be difficult to separate the pistol from the difficulty; it was all part of the res gestae, occurring at the same time, and, if he had the pistol, explanatory of why he drew it. The court charged the jury with reference to his right to have the pistol if any danger to him was threatening and imminent; so that he could not have the parties arrested. Of course, if he had a right to have the pistol at the time there was no time for arresting the parties who were attacking him. It all occurred evidently in a very brief space of time and there were no officers to whom he could appeal. The court also charged with reference to appellant's right to carry a pistol as a traveler, curtailing that with the proposition that if he deflected from his route and went to the country and engaged in other matters, etc., that he would not be entitled to the defense of being a traveler. As before stated, no exceptions were properly reserved, and therefore, those matters will not be reviewed. We think the evidence with regard to the transaction and what brought up the trouble and caused the exhibition of the pistol was admissible.

There is a bill of exceptions, however, which we think presents reversible error. The county attorney in his speech to the jury said:

"The defendant has sought to impeach the reputation of one of the witnesses, but there stands before you a witness whose reputation for truth and veracity has not been impeached. He also testifies that the defendant had a pistol. This witness is Jim Kuykendall. Jim Kuykendall bears a good reputation for truth and veracity in the community in which he resides. He is honest, he is truthful and will not lie; he is exacting; he wants what is his own, but he will not lie. No man

has a better reputation for truth and veracity than Jim Kuykendall, and the young attorneys for the defendant will not deny this for all of Williamson County. Some of you jurymen know this man. You know his reputation for truth and veracity. You know his reputation for truth and veracity. You know that it is good. You know that what I state is the truth and you know that Jim Kuykendall would not lie."

Objection was interposed and sustained by the court, the court remarking at the time to the jury that they would disregard this part of the county attorney's argument. The appellant requested further that the jury be instructed in regard to this matter. It is recited in the bill: "In view of the fact that the witness Kuykendall's reputation for truth and veracity is not in testimony or evidence, and in view of the fact that the county attorney has just reminded the jury that there are some of them personally acquainted with the witness and know his reputation for truth and veracity and know that he will not tell a lie, the defendant moves and asks the court to instruct the jury that in determining the weight and credit to be given the testimony of the witness Kuykendall, that they will not consider any private knowledge that they may have of this witness' truthfulness or of his reputation for truth and veracity, and that in considering the weight and credit to be given his testimony that they will consider no private knowledge that they may have of his truthfulness, but that they will consider in determining the issue the facts that he swore to and his demeanor while on the witness stand alone.

"Court: Well, a juror could hardly lay that aside."

The court qualifies this bill by stating that when the objection was made to the argument he promptly sustained it and instructed the jury to disregard all of this argument, and only consider testimony that had been admitted before them by the court, and not to consider the argument used in the bill for any purpose. Then the court states that appellant's attorney asked the instruction practically as above set out, and that the court replied in the presence of the jury, "the instruction will be refused; the jury has been instructed to disregard the argument entirely and only consider testimony admitted before them by the court."

This is a misdemeanor case. The court's charge or instruction to the jury, if it be considered as such, was verbal and not in writing. The statute prohibits verbal charges given the jury in misdemeanor cases except by consent of the parties. So we may consider the court's verbal instruction as not in accordance with the statute. The statute has been held to be mandatory. Quite a number of decisions will be found collated in Vernon's Annotated Criminal Procedure, under article 740, on page 500. There are a great many cases there cited sustaining the statement that this statutory provision is mandatory. The statute reads as follows: "No verbal charge shall be given in any case whatever except in cases of misdemeanor, and then only by consent of the parties." Another article of the Code of Criminal Procedure with reference to charges requires that all charges shall be in

writing submitting the law of the case. The jury was only partially instructed as to the law regarding the illegal argument. That the argument of the county attorney is without warrant or fact will not be questioned under this record. He not only testified himself in his speech, without being sworn and taking the witness stand, as to the high character and standing of the witness Kuykendall for truth and veracity, but he made the further statement that the jurors knew all this, and yet none of them were placed on the stand; in fact, Kuykendall's testimony was not attacked in regard to his veracity. This particular argument was more than usually harmful. Of the four witnesses who testified, appellant denied having the pistol; the storekeeper did not see it; Avery was impeached, and Kuykendall alone remained unimpeached. So of all the witnesses who testified against him Kuykendall was the most important and dangerous witness, because of the fact he was not impeached. The appellant did not offer any testimony to impeach Kuykendall. While it is true he undertook to prove by his own testimony while testifying in his own behalf that he had no pistol, this was not an impeachment of Kuykendall, but a conflict in their testimony as to the fact. Here stood defendant, witness in his own case, with whatever impediment to his case this might have been. A conviction meant to him punishment. Kuykendall testified to seeing the pistol and was unimpeached. So he stood as the only unimpeached witness in the case, unless we include the defendant, who knew or could testify differently with reference to the fact of the pistol being on him. The county attorney lending his official status to the case, testifying before the jury unsworn, without taking the stand as a witness, and calling the jury's attention to the fact they knew Kuykendall was an unimpeachable witness. This may have caused the jury to find the verdict they did. If appellant told the truth he had no pistol. If Kuykendall told the truth he did have a pistol. It was a sharp issue and to the point. The county attorney's statements may have turned the scales. It was material and very material on this phase of the case. It may have determined the jury in their belief as to the credibility of the witness and weight to be given the testimony.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

PRENDERGAST, Presiding Judge (dissenting.)—The statute requiring charges to be in writing means, and has always been held to mean the main charge in the submission of the case to the jury for a finding, not some mere side issue or incidental matter arising during the trial. Moreover, appellant in no way, either in the court below or this, excepted or complained that the court did not put in writing what he told the jury when he objected to the county attorney's speech, as follows: "When the objection was made to the argument used, the court promptly sustained the same and instructed the jury to disregard all of this argument and only consider testimony that had been admitted before them by the court, and not to consider the argument used in

the bill for any purpose." What he then and now complains of was that the court did not give a further charge. I think the further charge was clearly covered in what the court had already given. Heretofore this court has always held, in such incidental matters, or side issues, as the question of said argument was, it is incumbent on the accused to ask in writing his charge, and if he does not do so, no reversible error is shown. In no event did the argument of the county attorney after the instruction by the judge present reversible error.

The case should be affirmed, not reversed.